IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| LANA VARNER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No.: |
| ) | Judge: |
| SERVICOM LLC, a foreign corporation, ) | |
| and JNET COMMUNICATIONS, LLC a ) | |
| foreign corporation, ) | |
| ) | |
| Defendants. ) | |

**COMPLAINT**

NOW COMES, Plaintiff, LANA VARNER, by and through her attorneys, Meredith W. Buckley and Seth R. Halpern of Malkinson & Halpern, P.C., and complains of Defendants, SERVICOM, LLC, a foreign corporation, and JNET COMMUNICATIONS, LLC, a foreign corporation, as follows:

**I.    Nature of the Case**

1.    Plaintiff, Lana Varner, (hereinafter õPlaintiffö or õVarnerö) was employed by Defendant Servicom, LLC (hereinafter õDefendantö or õServicomö) from approximately December 2, 2014, through her termination on or about September 21, 2015.  Servicom is a division of Defendant JNET Communications.

2.    This is an individual action brought by Plaintiff for violations of the Fair Labor Standards Act, 29 U.S.C. Section 215(a)(3) (hereinafter õFLSAö) and the Illinois Whistleblower Act, 740 ILCS 174/20 (hereinafter õIWAö).

3. Plaintiff alleges Defendants violated the FLSA and the IWA by taking negative employment action against Plaintiff and terminating Plaintiff because she engaged in protected activity under the FLSA and the IWA.

4. As a result of Defendants' unlawful conduct, Plaintiff has suffered lost wages and benefits and has suffered and continues to suffer from significant emotional distress. Plaintiff seeks compensatory and punitive damages, reasonable attorneys' fees and costs and other appropriate legal and equitable relief allowed under law.

## II. Jurisdiction and Venue

5. This Court has jurisdiction of this case pursuant to the FLSA, 29 U.S.C. § 201 *et seq.,* and supplemental jurisdiction over Plaintiff's IWA claim pursuant to 28 U.S.C. § 1367

6. This action properly lies in this district pursuant to 28 U.S.C. § 1391 because the claim arose in this judicial district.

## III. Parties

7. Plaintiff is a citizen of the United States of America and at all times relevant resided at and currently resides in the City of Rockford, County of Winnebago, State of Illinois.

8. Defendants hired Plaintiff on or about December 2, 2014, as a program manager and Plaintiff held that position until her termination on or about September 21, 2015.

9. Defendants, JNET Communications and Servicom, are foreign corporations with their headquarters located at 25 Independence Blvd., Suite 103, Warren, New Jersey. Defendant, Servicom, is a division of Defendant, JNet Communications.

10. Defendants operate various call centers which provide customer sales, customer service, technological support and market research for various companies, including Comcast, the national cable and internet provider.

11. One of Defendants' call centers is located at 175 Executive Parkway, Rockford, Illinois (hereinafter "call center"). Throughout most of Plaintiff's employment she worked at this call center as a program manager for the Comcast account.

12. As a program manager, Plaintiff supervised anywhere from 50 to 150 call center employees that were handling Comcast customer service and sales calls.

13. At all times relevant, Plaintiff performed her job satisfactorily and to the reasonable business expectations of her employers.

14. At all relevant times, Defendant, Servicom, was and remains an employer within the meaning of the FLSA and the IWA.

15. At all relevant times, Defendant JNet Communications was and remains an employer within the meaning of the FLSA and the IWA.

16. At all times relevant, Plaintiff was an employee within the meaning of the FLSA and the IWA.

17. Defendant JNet Communications exercised significant control over the employees of Servicom, including Plaintiff. JNet employees, including but not limited to, David Jefferson, Chairman and Chief Executive Officer of JNet, directly supervised Plaintiff and other Servicom employees' work performance, set certain policies and procedures which Plaintiff and other Servicom employees were required to follow and JNet employees were directly involved in employment actions which resulted in Plaintiff's wrongful termination.

**IV.** **Factual Allegations**

18. Plaintiff was hired as a program manager on the Comcast account on or about December 2, 2015.

19. Defendants' supervisors, including but not limited to, David Jefferson, CEO of JNet, Anthony Brussa, Workforce Manager, Brandon Ross, Site Director, Jesse Heard, Workforce Supervisor, and Erich Ruszczak, Workforce Supervisor, (hereinafter "supervisors") trained Plaintiff on its policies and procedures and communicated to Plaintiff the specific benchmarks, or "scores," its call center phone operators or "agents" were required to meet for the Comcast account.

20. Defendants' call center was equipped with phones that automatically measured various quantitative factors for each agent. Each agent would log into a phone and this phone would act as the agent's time clock as well as automatically measure job performance factors which included (a) numbers of call handled ("NCH"); (b) average call handle time ("AHT"); and (c) after call work time ("ACW").

21. Defendants' supervisors would set specific scores for the average "NCH," "AHT," and "ACW," times that Plaintiff, as a program manager, was required to have agents meet for each shift. Defendants' supervisors also set requirements for "line adherence" or the number of agents that were to be "logged in" and receiving calls during shifts.

22. "AHT" was the total time an agent was on a call, including time speaking to a Comcast customer, time on hold and all time spent "ACW" or after the call completing necessary paper work and making notes.

23. Within the first few weeks of Plaintiff's employment, it became apparent that the shifts were not meeting the required line adherence for the Comcast account. Shifts were unable

4

to meet line adherence because there were not enough agents working each shift to meet the line adherence requirement for the Comcast account.

24. In an effort to meet the line adherence numbers, Defendants' supervisors instructed Plaintiff and other management personnel to login agents and other employees who were not present at the call center and then once logged in, place the phone in "ACW" mode so that no calls would be routed to the phone. This practice was referred to as logging in "ghost agents." The "ghost agents" would help in meeting the line adherence goals for a shift.

25. In addition to using "ghost agents," Defendants' supervisors instructed Plaintiff, and other program managers, to refuse agent's requests for bathroom breaks and force agents to work through meal breaks, all in an effort to meet line adherence and other quantitative factors.

26. Agents did not have paid meal breaks; rather Defendants automatically deducted time from agents' payroll for meal breaks. Agents repeatedly and continuously complained to Plaintiff that they were not paid when they were forced to work through a meal break. Plaintiff repeatedly reported the agents' complaints of non-payment and off-the-clock work to Human Resources, Payroll administrators and her supervisors.

27. Additionally, because the phones were used as time clocks for the agents, when Defendants would engage in the practice of logging in "ghost agents," Defendants would attempt to "correct" payroll records so that agents would not be paid for time that they did not work. Defendants repeatedly and continuously made errors in adjusting the payroll records and agents would complain to Plaintiff that their pay was incorrect. Plaintiff repeatedly reported the agents' complaints of incorrect pay to Human Resources, Payroll administrators and her supervisors.

28. Plaintiff repeatedly and continuously reported and complained to Defendants' that because of Defendants' policies and practices, agents were not being paid correctly and agents

were not being paid for all time worked in violation of Illinois and Federal law. Despite Plaintiff's complaints, Defendants' supervisors told her to continue to hold breaks for agents and continue logging in ghost agents in order to meet certain quantitative goals for the Comcast account.

29. Plaintiff believed that Defendants' practices which resulted in agents not being paid for all time work violated the law and she repeatedly told Defendants she would not engage in such practices.

30. As a result of Defendants' practices, an agent filed a complaint with the Department of Labor. The Department of Labor conducted interviews and an investigation at the call center. When Plaintiff arrived at work, Plaintiff was instructed by Eric Black, Defendants' acting Human Resource Manager at the Rockford call center, to deny any wage and hour violations. Plaintiff refused and said she would answers all questions truthfully during any investigation. Plaintiff was never interviewed during any investigation.

31. Defendants' supervisors expressed disapproval in response to Plaintiff's above mentioned reports of wage violations and her refusal to engage in practices that resulted in agents not being paid for all time worked. Plaintiff was demeaned and criticized in group meetings and her supervisors directly communicated their dissatisfaction with her complaints and refusals.

32. In addition to ignoring Plaintiff's reports and ordering her to continue to engage in policies and practices that resulted in non-payment of wages for agents, Defendants also took retaliatory employment actions against Plaintiff which included, but is not limited to:

    (a)    setting unobtainable performance goals for Plaintiff and subjecting her to discipline if she failed to meet such goals;

6

      (b)      subjecting Plaintiff to more negative and more harsh terms and conditions of employment than other employees;

      (c)      putting Plaintiff on a performance improvement plan; and

      (d)      terminating Plaintiff.

33.      On September 21, 2015, Defendants terminated Plaintiff in retaliation for Plaintiff's protected acts under the FLSA, which included:

      (a) complaining about Defendants' policies and practices which resulted in agents not being paid for all time worked;

      (b) refusing to engage in policies and practices that resulted in agents not being paid for all time worked; and

      (c) expressing her intentions to cooperate with a Department of Labor investigation of such misconduct by Defendants.

34.      Additionally, Defendant violated the IWA because Plaintiff was terminated for her refusal to engage in policies and practices for which Plaintiff had a good faith belief were in violation of the law.

## COUNT I
### Violation of Section 215(a)(3) of the FLSA – Retaliation and Discharge

35.      Plaintiff repeats and realleges paragraphs 1-34 of the Complaint as if they are fully set forth herein.

36.      As complained of herein, Plaintiff engaged in protected activity under the FLSA in that she (a) complained to Defendants about its policies and practices that resulted in employees not being paid wages for all time worked; (b) Plaintiff refused to participate in Defendants' policies and practices that resulted in the non-payment of wages and (c) Plaintiff expressed her intentions to cooperate with a Department of Labor investigation.

37.      In retaliation for Plaintiff's protected acts under the FLSA, Defendants took negative employment action against her which included, but is not limited to:

7

    (a)    setting unobtainable performance goals for Plaintiff and subjecting her to discipline if she failed to meet such goals;

    (b)    subjecting Plaintiff to more negative and more harsh terms and conditions of employment than other employees;

    (c)    putting Plaintiff on a performance improvement plan; and

    (d)    terminating Plaintiff.

38. The foregoing constitutes impermissible retaliation under the FLSA in violation of Section 215(a) (3).

39. As a result of Defendants' unlawful employment actions complained of herein, Plaintiff experienced, and continues to experience, lost wages and benefits and has suffered and continues to suffer from severe emotional distress, embarrassment, mental anguish and humiliation.

WHEREFORE, Plaintiff LANA VARNER, respectfully prays that this Court enter an Order:

    (a)    Declaring the conduct of the Defendants and its agents/employees, as described herein, is in violation of the Fair Labor Standards Act, 29 U.S.C. § 215 (a)(3);

    (b)    Awarding Plaintiff back pay and benefits and any other pecuniary losses she suffered as a result of Defendant's conduct;

    (c)    Award Plaintiff compensatory and liquidated damages;

    (d)    Award Plaintiff punitive damages;

    (e)    Award Plaintiff reasonable attorney's fees and costs;

    (f)    Permanently enjoin and retrain Defendants from in any manner, allowing or permitting retaliation for protected acts under FLSA; and/or

    (g)    such other relief this Court deems just and proper.

## COUNT II
### Violations of the Illinois Whistleblower Act, 740 ILCS 174/20

40. Plaintiff repeats and realleges paragraphs 1-34 of the Complaint as if they are fully set forth herein.

41. As alleged herein, Plaintiff refused to engage in activity for which she had a good faith belief was in violation of the law when she repeatedly and continually told Defendants she would not engage in deceptive practices that resulted in agents not being paid for all time worked.

42. In retaliation for Plaintiff's protected acts under the IWA, Defendants took negative employment action against her which included, but is not limited to:

   (a) setting unobtainable performance goals for Plaintiff and subjecting her to discipline if she failed to meet such goals;

   (b) subjecting Plaintiff to more negative and more harsh terms and conditions of employment than other employees;

   (c) putting Plaintiff on a performance improvement plan; and

   (d) terminating Plaintiff.

43. The foregoing constitutes impermissible retaliation under the IWA, 740 ILCS 174/20 and 174/20.1.

WHEREFORE, Plaintiff LANA VARNER, respectfully prays that this Court enter an Order:

   (a) Declaring the conduct of the Defendants and its agents/employees, as described herein, is in violation of the Illinois Whistleblower Act, 740 ILCS 174/20 *et seq.*

   (b) Awarding Plaintiff back pay and benefits and any other pecuniary losses she suffered as a result of Defendant's conduct;

9

(c) Award Plaintiff compensatory damages;

(d) Award Plaintiff reasonable attorney's fees and costs;

(e) Permanently enjoin and retrain Defendants from in any manner, allowing or permitting retaliation for protected acts under IWA; and/or

(f) such other relief this Court deems just and proper.

**DATED: January 11, 2017**

**PLAINTIFF DEMAND A TRIAL BY JURY**

                                                    Respectfully Submitted:

                                                    s/Meredith W. Buckley
                                                    Meredith W. Buckley

Seth R. Halpern
Meredith W. Buckley
MALKINSON & HALPERN, P.C.
208 S. LaSalle St., Suite 1750
Chicago, Illinois 60604
(312) 427-9600
shalpern@mhtriallaw.com
mbuckley@mhtriallaw.com